UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANDREW GEORGE QUINN,  )
               Petitioner,  )  CASE NO. C05-1349-JCC
        v.  )  REPORT AND RECOMMENDATION
HAROLD W. CLARKE,  )
               Respondent.  )
_____ )

## I. INTRODUCTION AND SUMMARY CONCLUSION

Petitioner Andrew Quinn is a state prisoner currently in the custody of the Washington State Department of Corrections. He seeks relief under 28 U.S.C. § 2254 from his re-sentencing on a February 2002 conviction for first degree murder. After careful consideration of the record, I concluded that no evidentiary hearing is required, and that this court should deny petitioner's habeas petition and dismiss this action with prejudice.

## II. FACTUAL AND PROCEDURAL HISTORY

A. <u>Background Facts</u>

In an unpublished opinion issued on April 7, 1997, the Washington Court of Appeals summarized the facts related to Petitioner's conviction as follows:

> Late at night in early December 1994, Andrew Quinn and Julia Watson rode on a METRO bus to downtown Seattle from Mercer Island.

REPORT AND RECOMMENDATION
Page - 1

|   |   |
|---|---|
| 1 | They got off the bus and started walking to meet two friends, Troy Walton and Sabrina Word.  Quinn and Watson bumped into Anthony Allen.  Quinn and Allen exchanged hostile words.  Then Walton and Word arrived, and after some conversation, Walton and Word went into a store, while Quinn and Watson went ahead to a bus stop.  Then, five to seven people, including Allen and Jason Jack, surrounded Quinn and Watson.  They threatened the pair.  They beat Quinn with their fists, and rammed his head into a metal pole.  Allen hit him several times in the face with a gun.  Walton and Word emerged from the store, and saw Quinn, bloodied and bruised, running away from three attackers.  Word called 911, but abandoned the effort as one of the perpetrators started towards her.  Watson escaped separately. |

They got off the bus and started walking to meet two friends, Troy Walton and Sabrina Word.  Quinn and Watson bumped into Anthony Allen.  Quinn and Allen exchanged hostile words.  Then Walton and Word arrived, and after some conversation, Walton and Word went into a store, while Quinn and Watson went ahead to a bus stop.  Then, five to seven people, including Allen and Jason Jack, surrounded Quinn and Watson.  They threatened the pair.  They beat Quinn with their fists, and rammed his head into a metal pole.  Allen hit him several times in the face with a gun.  Walton and Word emerged from the store, and saw Quinn, bloodied and bruised, running away from three attackers.  Word called 911, but abandoned the effort as one of the perpetrators started towards her.  Watson escaped separately.

An incident that occurred the next day is the subject of assigned error, because the trial court excluded testimony relating to it.  Allen saw Walton and confronted him with a slur allegedly made by either Walton or Quinn against Jack and Allen's gang.  When Walton denied making the slur, Allen told him that Quinn was "dead."

Soon thereafter, Quinn and Walton went together to purchase a gun.  Quinn purchased a .44 caliber, after firing it to make sure that it worked.  A few days later, Quinn, carrying that gun, caught a bus downtown with Walton.  Cherisse Brunson, who is Jack's cousin, was on the same bus.  She overheard a conversation between Quinn and another man; the man asked to buy a gun from Quinn.  Quinn declined to sell, saying he intended to commit a crime.  Quinn was also rapping to himself, using words equivalent to "killing a motherfucker."  Jack and Allen were at a bus stop near the King County Courthouse.  Quinn, Walton, Jack, and Allen yelled and gestured at each other.  Yet Quinn and Walton rode to the next stop.  Sometime after getting off of the bus, Quinn fired his weapon towards Jack and Allen.

Witnesses differed when asked how many shots were fired.  They did not agree whether the shots came from pistols with different calibers.  Allen also had a gun.  But the defense did not dispute that Quinn killed Jack.  Instead, it focused on self-defense.  The state charged Quinn with murder in the first degree (with a deadly weapon allegation), and murder in the second degree (causing Jack's death while committing second degree assault).  The jury convicted on both counts.

Dkt. #11, Ex. 7.  On September 29, 1995, petitioner was sentenced to 360 months on Count I, Murder 1st degree, and 217 months on Count II, Murder 2nd degree, with the sentences to run concurrently.  Dkt. #11, Ex. 1.

//

REPORT AND RECOMMENDATION
Page - 2

B. <u>Procedural History</u>

Petitioner appealed the trial and sentencing to the Washington Court of Appeals, Div. I, claiming that the trial court repeatedly misapplied the hearsay rule, ineffective assistance of counsel, and the trial court abused its discretion in refusing to admit evidence relating to gang affiliation/activity. *Id.* at Ex. 4. The Court of Appeals affirmed the judgment and sentence in an unpublished opinion on April 7, 1997. *Id.* at Ex. 7. On September 3, 1997, Petitioner's petition for discretionary review was denied by the Supreme Court of Washington. *Id.* at Ex. 9. The Court of Appeals issued a mandate on October 13, 1997. *Id.* at Ex. 10.

On October 9, 1998, Petitioner filed a personal restraint petition ("PRP") in the Court of Appeals. *Id.* at 11. Petitioner raised a number of claims, including that his two homicide convictions and sentences arising from a single death violated the double jeopardy clause of the state and federal constitutions. In an unpublished opinion issued on August 23, 1999, the Court of Appeals granted his PRP on the basis of double jeopardy and remanded the case to the trial court with instruction to vacate his second degree felony murder conviction and sentence him for his first degree murder conviction. *Id.* at Ex. 13. In all other respects, petitioner's PRP was denied. Ex. 13 at 15. Petitioner's motion for discretionary review was denied by the Supreme Court of Washington on March 2, 2000. Dkt. #11, Ex. 15. The mandate from the Court of Appeals issued on May 5, 2000. *Id.* at Ex. 16.

The trial court entered an amended judgment and sentence in February 2002, in which it vacated petitioner's second degree murder conviction and resentenced him to 300 months of confinement on his first degree murder conviction. *Id.* at Ex. 2. Petitioner appealed the amended judgment and sentence to the Washington Supreme

REPORT AND RECOMMENDATION
Page - 3

Court, claiming that his first degree murder conviction should be vacated rather than the second degree murder conviction. *Id.* at Exs. 17, 18.  The state supreme court transferred the case to the Court of Appeals, which issued an unpublished opinion on November 10, 2003, finding that the sentencing court properly vacated the "lesser" conviction for second degree murder and affirming petitioner's sentence for first degree murder. *Id.* at Ex. 22.   Petitioner next filed a petition for review in the Washington State Supreme Court, claiming that 1) his first degree murder conviction should be vacated rather than the second degree murder conviction under the Double Jeopardy Clause and Fifth Amendment to the United States Constitution; and 2) that his first degree murder conviction should be vacated rather than the second degree murder conviction under the due process clause of the Fourteenth Amendment to the United States Constitution. *Id.* at Ex. 23.  The state supreme court denied the petition for review on July 7, 2004 (Ex 24), and the Court of Appeals issued the mandate on August 3, 2004 (Ex. 25).

Petitioner filed the present petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on August 2, 2005.  Respondent filed an answer to the petition along with relevant portions of the state court record.  The briefing is now complete and this matter is ripe for review.

### III.  GROUNDS FOR REVIEW

Petitioner presents the following grounds for federal habeas relief:

<u>Ground One</u>:  Mr. Quinn's first degree murder convictions should be vacated rather than the second degree murder conviction under the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution.

<u>Ground Two</u>: Mr. Quinn's first degree murder conviction should be vacated rather than the second degree murder conviction under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

REPORT AND RECOMMENDATION
Page - 4

1  Respondent concedes that Petitioner has properly exhausted both of his habeas

2  claims by having presented the claims to the Washington State Supreme Court as federal

3  constitutional violations. Dkt. #9 at 9.

## IV.  STANDARD OF REVIEW

A habeas corpus petition shall not be granted with respect to any claim adjudicated on the merits in the state courts unless the adjudication either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. 28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the U.S. Supreme Court on a question of law, or if the state court decides a case differently than the U.S. Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Id.* at 413. The Ninth Circuit has interpreted "an unreasonable application of law" to mean application that is "clearly erroneous." *Van Tran v. Lindsey*, 212 F.3d 1143, 1152-54 (9th Cir.), *cert. denied*, 531 U.S. 944 (2000).

Additionally, if a habeas petitioner challenges the determination of a factual issue by a state court, such determination is presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

REPORT AND RECOMMENDATION
Page - 5

V.  DISCUSSION

A.    Ground One: Double Jeopardy

Petitioner argues that his first degree murder conviction should be vacated rather than the second degree murder conviction under the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. The double jeopardy clause of the Fifth Amendment prohibits multiple punishments for the same offense. However, as argued by respondent, petitioner's habeas petition challenges the amended sentence entered by the trial court, which resentenced petitioner for only one offense, first degree murder, and vacated his second degree murder conviction. Thus, petitioner's habeas petition does not present a double jeopardy claim.

B.    Ground Two: Due Process

Petitioner also argues that his first degree murder conviction should be vacated rather than the second degree murder conviction under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Respondent contends that petitioner's habeas petition appears to assert only state law sentencing issues and thus should be dismissed for failing to present cognizable grounds for federal habeas relief.

Federal habeas corpus relief does not lie for errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (citation). Absent a showing of fundamental unfairness, a state court's misapplication of its own sentencing laws does not justify federal habeas relief. *Christian v. Rhode*, 41 F.3d 461, 469 (9th Cir. 1994). Thus, the petitioner must establish that an error of constitutional significance occurred in order to state a cognizable federal habeas claim. *See McGuire*, 502 U.S. at 68.

Under Washington case law, the appropriate remedy for a double jeopardy violation is vacation of the "lesser" conviction. *State v.* Burchfield, 111 Wash. App.

REPORT AND RECOMMENDATION
Page - 6

892, 899, 46 P.3d 840 (2002), (citing *State v. Portrey*, 102 Wash. App. 898, 906-07, 10 P.3d 481 (2000)); *State v. Cunningham*, 23 Wash. App. 826, 863, 598 P.2d 756 (1979), *reversed on other grounds*, 93 Wash.2d 823, 613 P.2d 1139 (1980); *see State v. Schwab*, 98 Wash. App. 179, 190, 988 P.2d 1045 (conviction for second degree felony murder affirmed and conviction for first degree manslaughter vacated on double jeopardy grounds).

Here, the state courts' application of Washington law was not fundamentally unfair. The Court of Appeals granted petitioner's PRP on the double jeopardy basis and remanded the case to the trial court with specific instruction to vacate his second degree felony murder conviction and sentence him for his first degree murder conviction. On remand, the trial court followed this specific direction from the Court of Appeals, which was in accordance with state law. Dkt. #11, Ex. 27 at 13-14. Therefore, the undersigned concludes that no federal constitutional right was implicated by the trial court's action, and accordingly, habeas corpus relief is unavailable for any alleged error in its interpretation or application of state law.

## VI.  CONCLUSION

For the reasons set forth above, this Court recommends that Petitioner's federal habeas petition be denied, and that this action be dismissed with prejudice. A proposed order accompanies this Report and Recommendation.

DATED this 1st day of May, 2006.

MONICA J. BENTON
United States Magistrate Judge

REPORT AND RECOMMENDATION
Page - 7